ACCEPTED
03-15-00231-CR
7844229
THIRD COURT OF APPEALS
AUSTIN, TEXAS
11/16/2015 1:54:39 PM
JEFFREY D. KYLE
CLERK

NO. 03-15-00231-CR

IN THE COURT OF APPEALS

OF THE THIRD DISTRICT OF TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
11/16/2015 1:54:39 PM
JEFFREY D. KYLE
Clerk

JONATHAN LEE FEHR,
                            Appellant

v.

THE STATE OF TEXAS
                            Appellee

Appeal in Cause No. CR06803 in the
33rd Judicial District Court of Llano County, Texas

## *Brief For Appellee*

OFFICE OF DISTRICT ATTORNEY
33RD and 424th JUDICIAL DISTRICTS
Wiley B. McAfee, District Attorney
P. O. Box 725, Llano, Texas 78643
Telephone          Telecopier
(325) 247-5755    (325) 247-5274
g.bunyard@co.llano.tx.us

By: Gary W. Bunyard
     Assistant District Attorney
     State Bar No. 03353500
     ATTORNEY FOR APPELLEE

November 16, 2015

*Oral Argument Requested*

## *Identity Of The Parties*

Trial Court

    Honorable J. Allan Garrett
    33rd Judicial District
    Burnet County Courthouse Annex (North)
    1701 East Polk St., Suite 74
    Burnet, TX 78611

State/Appellee

    Anthony J. "Tony" Dodson        (Trial Counsel)
    Assistant District Attorney
    P. O. Box 725
    Llano, Texas 78643
    (325) 247-5755
    State Bar No. 05927200

    Perry Thomas        (Trial Counsel)
    First Assistant District Attorney
    P.O. Box 725
    Llano, Texas 78643
    (325) 247 - 5755
    State Bar No. 19849120

    Gary W. Bunyard        (Appellate Counsel)
    Assistant District Attorney
    P. O. Box 725
    Llano, Texas 78643
    (325) 247-5755
    State Bar No. 03353500
    g.bunyard@co.llano.tx.us

Appellant

Richard Mock                           (Trial Counsel)
400 S. Main St.
Burnet, Texas 78611
State Bar No. 14242500

Justin Bradford Smith                  (Appellate Counsel)
Harrell, Stoebner, & Russel, P.C.
2106 Bird Creek Dr.
Temple, TX 76502
State Bar No. 24072348
justin@templelawoffice.com

Jonathan Lee Fehr                      (Appellant)
TDCJ #01991740
SID #06419655
Choice Moore Transfer Unit
1700 N. FM 87
Bonham, TX 75418

# Table Of Contents

Page

Index of Authorities............................................................. v

Statement of the Case........................................................ 1

Statement on Oral Argument.............................................. 2

Response to Issues Presented............................................. 2

Statement of the Facts......................................................... 3

Summary of the Argument - Response to Issue No. 1............... 9
  There is sufficient evidence in the record to support the
  verdict of the jury that Appellant is guilty of the offense
  of Burglary of a Habitation by direct commission.

Summary of the Argument - Response to Issue No. 2............... 9
  There is sufficient evidence in the record to support the
  verdict of the jury that Appellant is guilty of the offense
  of Burglary of a Habitation by party liability.

Argument on Response to Issue No. 1 and to Issue No. 2

  1.1 and 2.1   Principals of Law................................................ 10

  1.2 and 2.2   Applicable Facts................................................ 12

  1.3 and 2.3   Discussion and Conclusion................................. 17

Prayer for Relief.................................................................. 23

Certificate of Word Count.................................................... 24

Certificate of Service........................................................... 24

# Index Of Authorities

Case Law                                                                 Page

*Adelman v. State*, 828 S.W.2d 418 (Tex. Crim. App. 1992)......          11, 12

*Ellard v. State*, 509 S.W.2d 622 (Tex. Crim. App.1974)...........        12

*Geesa v. State*, 820 S.W.2d 154, (Tex. Crim. App. 1991)........          10

*Griffith v. State*, 976 S.W.2d 686 (Tex. App.--
       Tyler 1997, pet. ref'd)............................................................       11

*Hardage v. State*, 552 S.W.2d 837 (Tex. Crim. App.1977)........          12

*Hardesty v. State*, 656 S.W.2d 73 (Tex. Crim. App.1983)..........        12

*Hooper v. State*, 214 S.W.3d 9 (Tex. Crim. App. 2007)..............      10, 11

*Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781;
       61 L. Ed. 2d 560 (1979)....................................................       10

*McIntosh v. State*, 855 S.W.2d 753 (Tex. App -
       Dallas 1993, pet. ref'd)..................................................       11

*Matson v. State*, 819 S.W.2d 839 (Tex. Crim. App. 1991).........        11, 12

*Merritt v. State*, 368 S.W.3d 516 (Tex. Crim. App. 2012).........        10

*Sharp v. State*, 707 S.W.2d 611 (Tex. Crim. App. 1986),
       *cert. denied*, 488 U.S. 872, 109 S. Ct. 190,
       102 L. Ed. 2d 159 (1988)................................................       11

*Walden v. State*, 165 Tex. Crim. R. 196, 305 S.W.2d 354
       (Tex. Crim. App.1957)....................................................       12

*Wall v. State*, 167 Tex. Crim. R. 634, 322 S.W.2d 641
(Tex. Crim. App.1959)........................................................... 12

*Williams v. State*, 631 S.W.2d 171 (Tex. Crim. App.1982)....... 12

*Winfrey v. State*, 393 S.W.3d 763 (Tex. Crim. App. 2013)....... 10

Constitutions

None cited

Statutes/Rules

Tex. R. App. Proc. Rule 38.1(g)................................................. 3

Treatises/Publications

None cited

## Statement Of The Case

Appellant was charged by Indictment with one count of Burglary of a Habitation and Committed Theft and with one count of Burglary of a Habitation With Intent to Commit Theft. CR Vol. 1 [filed May 19, 2015] Pages 6 - 7. At the conclusion of the evidence in the Guilt/Innocence phase of the trial, the Court's Charge instructed the Jury that Burglary of a Habitation could be committed either by entry and then committing theft or by entry with the intent to commit theft, however, the Application paragraph and the Verdict Form only permitted conviction or acquittal to one charge of Burglary of a Habitation. CR Vol. 1 [filed May 19, 2015] Pages 46 - 52. Appellant elected to have the Jury assess punishment. CR Vol. 1 [filed May 19, 2015] Page 44. After taking evidence on punishment, the Jury assessed punishment at fifteen (15) years incarceration in the Institutional Division of the Texas Department of Criminal Justice and a fine of $7,500.00. CR Vol. 1 [filed May 19, 2015] Page 57. Following this conviction and sentence, Appellant filed his Motion for New Trial. CR Vol. 1 [filed May 19, 2015] Pages 58 - 62. After conducting a hearing on the Motion for New Trial, the trial court denied the relief requested. CR Vol. 1 [filed May 19, 2015] Pages 65, 69. Appellant then timely filed his Notice of Appeal. CR Vol. 1 [filed May 19, 2015] Page 71.

## Statement on Oral Argument

The undersigned requests Oral Argument. While the undersigned does not believe that Oral Argument will be beneficial for this case for the reason that the issues are straight forward and lack any novel or complex nuances, Appellant has requested Oral Argument. Should the Court believe that Oral Argument will assist the Court in any way, the undersigned will gladly accommodate the Court.

## Response To Issues Presented

Response To Issue One: There is sufficient evidence in the record to support the verdict of the jury that Appellant is guilty of the offense of Burglary of a Habitation by direct commission.

Response To Issue Two: There is sufficient evidence in the record to support the verdict of the jury that Appellant is guilty of the offense of Burglary of a Habitation by party liability.

## Statement Of The Facts

Appellant has not properly described the facts of this case pursuant to Texas Rules of Appellate Procedure Rule 38.1(g).

At approximately 5:30 p.m. on October 7, 2013, the Complaint came home from work and then left his residence at about 6:00 p.m. without having noticed any sign of a problem. RR Vol. 4 Page 21. On October 8, 2013, the Complainant went to the ATM to make a withdrawal and upon completing the transaction noticed that the account balance on the ATM receipt was short $600. RR Vol. 4 Pages 23 - 24. Later that evening the Complainant looked up his bank account from the computer at his girlfriend's house and found an unauthorized check had been cashed. RR Vol. 4 Pages 24 - 25. The check number was not within the correct sequence with the checks in the book that the Complainant kept in his vehicle. RR Vol. 4 Page 24. When the Complainant arrived back at his residence at approximately 10:15 p.m. on October 8, 2013, he immediately observed that his lawnmower and trailer were missing. RR Vol. 4 Page 26. The Complainant entered his residence and observed that his 55" television was missing, various items of stuff had been gone through, CDs and DVDs were missing, and a stereo and a chain saw was missing as well as his firearms. RR Vol. 4 Page 27. The Complainant also discovered that his two

pair of binoculars and three check books were missing. RR Vol. 4 Page 31. The stolen riding lawn mower had custom wiring to the power take off or PTO. RR Vol. 4 Page 34. Later the stolen lawn mower, the trailer, and the television were recovered by law enforcement. RR Vol. 4 Pages 33, 34; Vol. 5 Page 43.

Once the report was made to the Llano County Sheriff's Office, Lt. Glenn Williams was assigned to conduct the investigation. RR Vol. 5 Pages 31 - 32. The Complainant has reported that he suspected his half sister, Brittany Anderson, as having committed the burglary and thefts. RR Vol. 5 Page 32 - 33. At the time Brittany Anderson was the girlfriend of Appellant. RR Vol. 5 Page 32. When Lt. Williams arrived at the residence of Appellant and Brittany Anderson both subjects were present. RR Vol. 5 Pages 38 - 39. When asked if they knew anything about the burglary and theft of the television, lawn mower, trailer, and guns both subject denied knowing anything about any of the items. RR Vol. 5 Pages 39 - 40. Lt. Williams asked for permission to search Appellant's residence and Appellant refused to give consent. RR Vol. 5 Page 42. However, Appellant did give consent for Lt. Williams to search the outside curtilage of the residence. RR Vol. 5 Page 43. Near the workshop Lt. Williams quickly found the stolen trailer. RR Vol. 5 Pages 43 - 44. The trailer had been partially repainted and all but one location where a VIN was stamped had been obliterated with a welder. RR Vol. 5 Pages 43 - 44. Lt. Williams

4

did observe that the paint on the floorboards of the trailer had knobby tire tracks that were consistent with lawnmower tires. RR Vol. 5 Page 44. Lt. Williams then seized the stolen trailer. RR Vol. 5 Page 48.

Later that same day, Lt. Williams returned with Community Supervision Officer Quinn Wilson. RR Vol. 5 Page 49. Because Brittany Anderson was on community supervision and was living at this residence, Officer Wilson was there to conduct a home inspection. RR Vol. 5 Page 49. Once entry was made in Appellant's residence Lt. Williams discovered the Complainant's stolen television, which Appellant had earlier told Lt. Williams that a television of that size would be too large for his home, mounted on the wall. RR Vol. 5 Pages 52 - 53. Not long after this Lt. Williams learned that the lawn mower was in possession of a neighbor named Bowen who lived several blocks away from Appellant. RR Vol. 5 Page 57. Mr. Bowen had borrowed the mower from Glen Jolly who had purchased the mower from Appellant. RR Vol. 5 Page 61, 94, 98. Appellant wrote out a bill of sale to Mr. Jolly for this transaction. RR Vol. 5 Page 94; Vol. 9 State's Exhibit 30. About this same time Appellant appeared at the Llano County Sheriff's Office to give Deputy Boyd a paper stating that "Danny" sold Appellant a mower and a trailer. RR Vol. 5 Page 84; Vol. 9 Defense Exhibit 2. Appellant represented to Deputy Boyd that the "Danny" on the receipt was Danny Napolez. RR Vol. 5 Page 86.

5

Deputy Boyd also testified that he had accompanied Community Supervision Officer Quinn Wilson and Lt. Williams when the search of Appellant's residence occurred. RR Vol. 5 Page 80. Deputy Boyd noted seeing two pair of binoculars which he later discovered were the same brand as those stolen from the Complainant. RR Vol. 5 Pages 80 - 81.

Danny Napolez testified that he was "chilling" at Appellant's residence when he noticed a flat screen television on the wall. RR Vol. 5 Page 112. Appellant told Napolez that the television belonged to Brittany. RR Vol. 5 Page 112. At this time Appellant offered to show Napolez some guns Appellant had hidden under his bed but Napolez declined . RR Vol. 5 Page 112 - 113. Appellant and Brittany invited Napolez to ride over to the Complainant's house with them. RR Vol. 5 Page 113.

Once they arrived at the Complainant's house Brittany told Appellant and Napolez to load up the trailer and mower because it was her's and then Brittany went into the Complainant's house.[1] RR Vol. 5 Page 111 - 114.

---

[1] This witness was never arrested or charged as a party to any of the offenses to which he testified.

6

Later that same day, Napolez went with Appellant and Brittany to Lowe's[2]. Appellant and Brittany wanted Napolez to endorse a check and try to cash it but Napolez refused because he knew it was a forgery. RR Vol. 5 Pages 116 - 117. At this point Brittany took the check to the bank teller window located in the outer wall of the building with Napolez and Appellant waiting in Appellant's truck. RR Vol. 5 Page 118.

When he was shown the receipt/bill of sale that Appellant presented to Deputy Boyd, Napolez denied writing out the receipt/bill of sale. RR Vol. 5 Page 119 - 120.

After the conclusion of the defense case in chief and as rebuttal, Brook Johanson was called by the State to testify. Ms. Johanson was the bank teller who received and honored the $600 check from Brittany Anderson. RR Vol. 6 Pages 20 - 22. Ms. Johanson is well familiar with both Appellant and Brittany Anderson. RR Vol. 6 Page 22 - 23. Although the check was processed on October 8, 2013, it was actually presented and honored by Ms. Johanson on October 7, 2013.[3] RR Vol. 6 Pages 25 - 26. The check was presented at 4:03 p.m. RR Vol. 6 Page 27. Ms.

---

[2] Lowe's is a local grocery store in which a branch of Llano National Bank is located. It contains a teller window in the exterior wall of the building so customers can conduct business without having to enter the grocery store portion of the building.

[3] Checks presented after 2:00 p.m. are not processed until the following day. RR Vol. 6 Page 26.

Johanson also testified that the check appeared to be in Appellant's handwriting as he has done on other checks. RR Vol. 6 Pages 29 - 30.[4] Ms. Johanson also observed Appellant sitting in his truck in the parking lot while Brittany Anderson was presenting the check.[5] RR Vol. 6 Page 30. The check was on the Complainant's account. RR Vol. 6 Page 35; Vol. 9 Defense Exhibit Seven.

---

[4] Although the reporter's record indicates examination on page 29 line 4, on page 30 line 8, and on page 34 line 3 is made by Appellant's counsel, Mr. Mock, this is an error in the record as the examination at these times was actually made by the prosecutor, Mr. Dodson.

[5] The bank area of the store has a bullet proof window installed in the outer wall of the building that customers can use as a walk-up teller station without having to come into the building. RR Vol. 6 Pages 30 - 33.

## Summary Of The Argument on
## Response to Issue No. 1 and Issue No. 2

**There is sufficient evidence in the record to support the verdict of the jury that Appellant is guilty of the offense of Burglary of a Habitation either by direct commission or by party liability.**

While Appellant seeks review of legal sufficiency in two independent issues, one on the basis of direct conduct and the other on the basis of party liability, the Court's Charge instructed the jury that this offense can be committed either as the result of Appellant's own conduct or on the basis of party liability and further instructed the jury that if it found Appellant had participated in the act in either manner then the jury was to find Appellant guilty of one count. In as much as a review of the same evidence is necessary to review each complaint, both issues will be addressed jointly in this brief. The overall task of the reviewing court is, considering the combined and cumulative force of all admitted evidence in the light most favorable to the conviction to determine whether, based on the evidence and reasonable inferences therefrom, could a rational trier of fact have found each element of the offense, whether by direct commission or by party liability, beyond a reasonable doubt. In this instance the answer is yes.

## Argument On Response to Issue No. 1 and Issue No. 2

### *1.1 and 2.1   Principals of Law*

When examining the legal sufficiency of the evidence, the reviewing court considers the combined and cumulative force of all admitted evidence in the light most favorable to the conviction to determine whether, based on the evidence and reasonable inferences therefrom, a rational trier of fact could have found each element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318 - 319; 99 S. Ct. 2781; 61 L. Ed. 2d 560 (1979); *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012).

Beyond a reasonable doubt does not require the State to disprove every conceivable alternative to a defendant's guilt. *Merritt v. State*, 368 S.W.3d 156, 525 (Tex. Crim. App. 2012); *Geesa v. State*, 820 S.W.2d 154, 160 - 161 (Tex. Crim. App. 1991).

Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Winfrey v. State*, 393 S.W.3d 763, 771 (Tex. Crim. App. 2013); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

The trier of fact is the exclusive judge of the credibility and weight of the evidence and is permitted to draw any reasonable inference, other than inferences based on mere speculation, from the evidence so long as it is supported by the record. *Hooper v. State*, 214 S.W.3d 9, 16 - 17 (Tex. Crim. App. 2007).

The jury may use common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986), *cert. denied*, 488 U.S. 872, 109 S. Ct. 190, 102 L. Ed. 2d 159 (1988); *Griffith v. State*, 976 S.W.2d 686, 690 (Tex. App.--Tyler 1997, pet. ref'd). The jury is free to believe or disbelieve any witness. *Sharp*, 707 S.W.2d at 614. The jury may resolve conflicts in the evidence, accept one version of the facts, disbelieve a party's evidence, and resolve any inconsistencies in favor of either party. *McIntosh v. State*, 855 S.W.2d 753, 763 (Tex. App - Dallas 1993, pet. ref'd).

The reviewing court does not resolve any conflict of fact or assign credibility to the witnesses, as it was the function of the trier of fact to do so. See *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); *Matson v. State*, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991). Instead the duty of the reviewing court is only to determine if both the explicit and implicit findings of the trier of fact are rational by

viewing all of the evidence admitted at trial in a light most favorable to the verdict. *Adelman*, 828 S.W.2d at 422. In so doing, any inconsistencies in the evidence are resolved in favor of the verdict. *Matson*, 819 S.W.2d at 843.

If a defendant is found in possession of recently stolen property and at the time of arrest fails to make a reasonable explanation showing his honest acquisition of the property, the fact finder may draw an inference of guilt. *Hardesty v. State*, 656 S.W.2d 73, 76 (Tex. Crim. App.1983); Williams v. State, 631 S.W.2d 171 (Tex. Crim. App.1982); Hardage v. State, 552 S.W.2d 837 (Tex. Crim. App.1977); Ellard v. State, 509 S.W.2d 622 (Tex. Crim. App.1974); Wall v. State, 167 Tex. Crim. R. 634, 322 S.W.2d 641, 643 (Tex. Crim. App.1959); Walden v. State, 165 Tex. Crim. R. 196, 305 S.W.2d 354 (Tex. Crim. App.1957).

### 1.2 and 2.2    Applicable Facts

On October 7, 2013, at 4:03 p.m. Brittany Anderson presented to Brook Johanson, a bank teller at the branch of Llano National Bank located at the Lowe's grocery store, a check drawn on the account of Shane Pope (Complainant) for the amount of $600.00. RR Vol. 6 Pages 20 - 27, 35; Vol. 9 Defense Exhibit Seven. Ms. Johanson, who is quite familiar with both Brittany Anderson and Appellant, recognized the writing on the check to be that of Appellant and observed, through

the teller window, Appellant sitting in his truck in the parking lot. RR Vol. 6 Pages 27 - 30.[6] This transaction was not authorized by the Complainant. RR Vol. 4 Pages 25 - 26.

At approximately 5:30 p.m. on October 7, 2013, the Complainant arrived at his residence after work without noticing anything unusual or out of place. RR Vol. 4 Page 21. About 6:00 p.m. the Complainant went to his girlfriend's house to spend the night. RR Vol. 4 Page 21. The Complainant did not return to his residence until approximately 10:30 p.m. on October 8, 2013. RR Vol. 4 Pages 22 - 23. During this absence the Complainant discovered that there was a discrepancy with his bank account and that a forged check of $600 had been debited from his account. RR Vol. 4 Pages 23 - 25. The number printed on the forged check came from a book that the Complainant had stored in his bedroom closet. RR Vol. 4 Pages 24 - 25.

Upon arriving at his residence on October 8, 2013, the Complainant immediately noticed that his riding lawnmower and a borrowed trailer were missing. RR

---

[6] Danny Napolez testified that he went with Appellant and Anderson to the bank and that he refused Anderson's request that Napolez sign the check and that he waited in the truck with Appellant and that this occurred late afternoon on October 8, 2013. RR Vol. 5 Pages 116 - 120.

Vol. 4 Pages 26, 32.[7]  The Complainant found no signs of forced entry into the residence.  RR Vol. 4 Pages 26 - 27.   Inspecting the interior of the residence the Complainant discovered that his 55" television had been removed from the wall mount and was missing, stuff had been gone through, CDs, DVDs, a stereo, and guns were missing.  RR Vol. 4 Pages 27 - 29.   Also taken were two binoculars and a chain saw.  RR Vol. 4 Page 31 - 32.

Once recovered by the Sheriff's Office, the Complainant was able to identify the 55" television, the riding lawn mower, and the trailer as being items stolen from him.  RR Vol. 4 Pages 33 - 34.

Appellant and Brittany Anderson were immediately developed as suspects by suspicions of the Complainant.  RR Vol. 5 Page 32.  Officials from the Sheriff's Office went to Appellant's residence on October 9, 2013. RR Vol. 5 Page 36. Brittany Anderson answered the door (RR Vol. 5 Page 38) and Appellant walked up from the shop area (RR Vol. 5 Page 39).   Both denied any knowledge of the burglary or about the television, the trailer, the lawn mower, and the guns.  RR Vol. 5 Pages 39 - 40.  Appellant denied permission for the deputies to search Appellant's residence but granted permission for a search of the curtilage and remaining areas

---

[7] The trailer was registered to the Complainant's employer, Richard Fain.  RR Vol. 5 Page 48.

around the residence. RR Vol. 5 Pages 42 - 43. Deputies quickly located the stolen trailer next to the shop. RR Vol. 5 Page 43. The trailer had been partially repainted and places where the Vehicle Identification Number had been stamped into the metal frame had be obliterated with a welding rod. RR Vol. 5 Pages 43 - 44. The VIN on the identification plate located on the tongue of the trailer had not been tampered with and confirmed that this was the stolen trailer. RR Vol. 5 Pages 43, 48.

Later, on the same day still being October 9, 2013, deputies returned to Appellant's residence accompanied by the local probation officer, Quinn Wilson. RR Vol. 5 Page 49. Mr. Wilson was present to conduct a home inspection because Brittany Anderson was on probation at the time. RR Vol. 5 Page 49. Mr. Wilson explained that the deputies will be accompanying Mr. Wilson on the home inspection for safety reasons. RR Vol. 5 Page 171. Upon entering the residence deputies immediately found the stolen television mounted on the wall. RR Vol. 5 Pages 52 - 53, 56.[8] When asked about this TV Appellant stated it belonged to his sister. RR Vol. 5 Page 53. Deputy Boyd observed two binoculars that he later

---

[8] There was some initial confusion as to whether this TV was the a 42" or a 55" due to inaccurate measuring. RR Vol. 5 Pages 90 - 91.

15

learned were of the same brand and type as those reported stolen by the Complainant but they were not seized. RR Vol. 5 Page 80 - 81.

Additional investigation quickly discovered the stolen lawn mower had been purchased by Glen Jolly from Appellant. RR Vol. 5 Pages 56 - 61, 94. Appellant gave Mr. Jolly a Bill of Sale for the lawn mower. RR Vol. 5 Pages 94 - 95; Vol. 9 State's Exhibit 30. Later, still on October 9, 2013, Appellant arrived at the Sheriff's Office and gave Deputy Boyd what Appellant represented to be a Bill of Sale for the lawn mower and trailer showing Appellant purchased the lawn mower and trailer from Danny Napolez. RR Vol. 5 Pages 83 - 85; Vol. 9 Defendant's Exhibit 2.

Danny Napolez testified that he went over to Appellant's house to "chill" and upon arrival observed a large flat screen television mounted on the wall that he had not seen before. RR Vol. 5 Page 112. Napolez asked Appellant where he got the TV from and Appellant replied that it was his sister's. RR Vol. 5 Page 112. While "chilling" at Appellant's residence, Appellant told Napolez that he had some guns under his bed and wanted to show them to Napolez but Napolez declined the invitation. RR Vol. 5 Pages 112 - 113. Then Napolez rode over to the Complainant's residence with Appellant and Brittany Anderson. RR Vol. 5 Page 111. Brittany told Appellant and Napolez to grab the lawn mower because it was hers and then she went inside the residence. RR Vol. 5 Pages 111 - 112. Several

months later Appellant gave Napolez a stereo of the same brand and model as that stolen from the Complainant. RR Vol. 4 Page 27; Vol. 5 Pages 113 - 114. Upon returning from Shane Pope's residence with the trailer and lawn mower, the trio went to Lowe's grocery store to cash a check. RR Vol. 5 Page 115 - 116. Appellant and Brittany asked Napolez to sign the check but he refused because it was not Brittany's check. RR Vol. 5 Page 116. Brittany took the check to the walk-up window and cashed the check.[9] When shown Defendant's Exhibit 2, the Bill of Sale that Appellant presented to Deputy Boyd as proof of purchase of the lawn mower, Napolez denied writing or signing the document. RR Vol. 5 Pages 119 - 120. Napolez admitted that he had a drug problem and was high on meth on the day he was describing. RR Vol. 5 Pages 114, 141.

### 1.3 and 2.3 Discussion and Conclusion

Based on the evidence before this jury, from the time line established, a rational jury could have concluded that there were up to three unlawful entries to the residence of Shane Pope, one of which resulted in theft of the television which is the entry that is the basis of the charge contained in the Indictment.

---

[9] The walk-up window is part of the Llano National Bank branch located within the grocery store.

A rational jury could find that one entry occurred prior to 4:03 p.m. on October 7, 2013, during which three books of checks were taken from Mr. Pope's bedroom closet. Based on the testimony of Brooke Johansen a rational jury could have found that one of these stolen checks was passed at 4:03 p.m. by Brittany Anderson with Appellant waiting in the pickup in the parking lot. The bank teller recognized the writing on the check to likely be that of Appellant.

A rational jury could also have determined that the next entry would be between 6:00 p.m. on October 7, 2013 and an undetermined time on October 8, 2013, which is based on the testimony of Shane Pope that he did not notice anything out of place between 5:30 p.m. and 6:00 p.m. on October 7, 2013, and at least a portion of the testimony of Danny Napolez that he arrived at Appellant's residence on October 8, 2013, and that this be the entry during which at least Mr. Pope's 55" television was taken and likely the CDs, DVDs, stereo, binoculars, chain saw, and guns were taken at this time as well.

A rational jury could have found that the third entry, based on at least part of the testimony of Danny Napolez, would have been on October 8, 2013, before 10:30 p.m., being the entry made by Brittany Anderson after she instructed Appellant and Napolez to grab the lawn mower and they hooked the trailer with the lawn mower

sitting on the floorboards to Appellant's pickup. What, if anything, was taken from inside the residence by Brittany Anderson at this time is unknown.

Other factors which a rational jury could have taken into consideration in making these findings are:

1. On the day following the theft, Appellant told officers that he knew nothing about a trailer yet the officers, just a few minutes later, found the stolen trailer at Appellant's shop and the trailer was in the process of being repainted and all but one of the VIN numbers had already been obliterated with a welding rod. Later that same day Appellant presented Deputy Boyd a bill of sale for the trailer purporting to have purchased it from Danny Napolez who, at trial, testified that he did not write or sign that bill of sale.

2. On the day following the theft, Appellant also denied to officers knowing anything about a 55" television and even stated that a television of that size would not fit in his residence. Appellant refused to allow officers to search his residence. However, later the same day, when Brittany Anderson's probation officer arrived with the officers to conduct a home inspection, officers immediately found the stolen television mounted to the wall of Appellant's residence. Appellant then told the officers that the TV belonged

to Brittany Anderson. Brittany Anderson did not testify at trial to either confirm or deny this.

3. On the day following the theft, officers located the stolen lawn mower. It had been purchased by Glen Jolly from Appellant and Appellant gave Mr. Jolly a bill of sale for the mower. Later that same day Appellant presented a bill of sale to Deputy Boyd for the lawn mower purporting to have purchased it from Danny Napolez who testified at trial that he did not write or sign that bill of sale.

4. On October 8, 2013, the day after or the day of the theft of the guns from the residence of Shane Pope, Appellant told Danny Napolez he had a number of guns that Appellant wanted to show to Napolez the description of one match the description of one of the guns stolen from the residence of Shane Pope.

In order to determine that Appellant committed this offense either directly or as a party with another, a rational jury could have considered the following:

1. Appellant drove Brittany Anderson to the bank on October 7, 2013 to cash a check which had been stolen from the bedroom closet in Shane Pope's residence. According to the bank teller, she is well acquainted with Appellant and his handwriting and it was her opinion that Appellant was the author of

the check. From this a rational jury could find that Appellant himself took the check books from Shane's residence or that he did so acting with Brittany.

2. The stolen television was mounted to the wall of Appellant's residence the day after the theft and Appellant gave officers conflicting explanations, first not knowing anything about it and stating that a TV of that size could not fit in his small travel trailer residence and second, once it was discovered, that it belonged to Brittany. A rational jury, based on common, every day experiences, could have inferred that such a television was too bulky and too heavy for most women, and many men, to remove from a wall, carry, and mount on another wall without assistance. From all of this information combined a rational jury could find that either Appellant himself took the television from Shane's residence or that he did so acting with Brittany.

3. Appellant was found in possession of the stolen trailer the day after the theft, and was also found to have just sold the stolen mower after having told officers he knew nothing about either the trailer or the mower. As soon as officers located the stolen trailer and mower and immediately determined a link to Appellant, Appellant presented officers with a hand written bill of sale about which he had previously said nothing. Danny Napolez testified that Appellant drove Napolez and Brittany to Shane's residence at which time

Brittany instructed Appellant to get the mower and then went into Shane's house. Danny Napolez also testified that he did not write or sign the bill of sale Appellant gave to officers. From this testimony a rational jury could have found that Appellant and Brittany worked together as part of any or all of the prior burglaries of Shane Pope's residence.

While there is clearly a conflict in the evidence as to the date on which the forged check was presented to Llano National Bank, it is obvious that the jury resolved this conflict in favor of conviction, choosing to believe part of the testimony of Danny Napolez while disbelieving part of the testimony.

Another point to note is that a jury can make a reasonable inference of guilt out of the unexplained recent possession of stolen property. While the trial court did not instruct the jury on this point, under these facts a rational jury could easily conclude that Appellant's recent possession of a large portion of the items stolen from inside and outside of the residence of Shane Pope coupled with a denial of knowledge of where the stolen items would be and then, after getting caught with many of the items, making explanations which turned out to be false, was sufficient to find Appellant Guilty beyond a reasonable doubt.

For these reasons the relief requested by Appellant in his Issue No. 1 and his Issue No. 2 must be denied and the trial court's judgment of conviction and sentence be affirmed.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Appellee prays the Court deny Appellant's appeal and affirm the judgment of the trial court.

Respectfully submitted,

OFFICE OF DISTRICT ATTORNEY
33RD and 424th JUDICIAL DISTRICTS
Wiley B. McAfee, District Attorney
P. O. Box 725
Llano, Texas 78643

| Telephone | Telecopier |
| --- | --- |
| (325) 247-5755 | (325) 247-5274 |

By: _____
Gary W. Bunyard
Assistant District Attorney
State Bar No. 03353500
g.bunyard@co.llano.tx.us
ATTORNEY FOR APPELLEE

## CERTIFICATE OF WORD COUNT

This is to certify that the pertinent portion of this brief contains 5,014 words printed in Aldine401BT 14 font, including footnotes being in Aldine401BT 12 font, according to the WordPerfect™ X7 word count tool.

Gary W. Bunyard

## CERTIFICATE OF SERVICE

This is to certify that a true copy of the above and foregoing instrument, together with this proof of service hereof, has been forwarded on the 16th day of October 2015, to Richard Davis, Attorney for Appellant, by email and by EServe.

Gary W. Bunyard
Assistant District Attorney